UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLAUDE STEELE,

        Petitioner,

vs.

J. BROWN, Warden,

        Respondent.
_____/

No. C 05-2061 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, a California prisoner currently incarcerated at San Quentin State Prison, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the August 2004 decision by the Board of Parole Hearings ("Board") finding petitioner unsuitable for parole. For the reasons set forth below, the petition will be denied.

## BACKGROUND

The Board summarized the facts of the commitment offense as follows:

> On January 1, 1981, Steele was cited by a Tehama County Sheriff Deputy for failing to stop at a stop sign. While the officer was issuing the citation, Steele started crying and confessed killing Clarence Baldwin. The Red Bluff Police Department was notified and the death was confirmed.
>
> According to the information provided by Steele during his initial confession and during an interview at the Tehama County Jail, Baldwin was killed after he made unwanted repeated homosexual advances toward him (Steele).

Answer Ex. 7 (Life Prisoner Evaluation Report, August 2004 Calendar).

Petitioner pleaded guilty to second degree murder in 1981. Answer Ex. 1 (Abstract of Judgment). He was sentenced to fifteen years to life in prison.

On August 25, 2004, petitioner, who was age forty-two and represented by counsel, appeared for his twelfth parole consideration hearing before a panel of the Board, which

denied parole for one year. Answer Ex. 5 at 3 (Cumulative Case Summary). Petitioner filed a state habeas petition in the superior court, which denied relief on January 5, 2005. Answer Ex. 12. Petitioner filed a habeas petition in the court of appeal, which summarily denied relief, and filed a petition for review in the state supreme court, which summarily denied review. Answer Exs. 14, 16.

On May 19, 2005, petitioner filed this petition for a writ of habeas corpus. The court ordered respondent to show cause why a writ should not be issued. Respondent filed a motion to dismiss, which the court denied in part and granted in part, dismissing the breach of plea agreement and right to jury trial claims. *See* Docket No. 9. Respondent filed an answer responding to the remaining claims in the petition, and petitioner has filed a traverse. The petition is submitted for a decision on the merits.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it

correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of a state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal court conducts "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. *See Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## DISCUSSION

As grounds for federal habeas relief, Petitioner claims that: (1) the Board's decision was not supported by "some evidence;" and (2) the Board's decision subjects him to a more severe sentence than that actually imposed, thereby violating his right not to be subjected to an ex post facto law. Neither of these claims merit habeas relief.

I.  **Due Process in Parole Suitability Determinations**

   A.  **Some Evidence Standard of Judicial Review**

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. *See*

*McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (citing *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979)). *See also Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.), *reh'g and reh'g en banc denied*, 506 F.3d 951 (9th Cir. 2007); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006), *reh'g and reh'g en banc denied*, No. 05-16455 (9th Cir. Feb. 13, 2007); *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. *Sass*, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). *See also Irons*, 505 F.3d at 851. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

Respondent contends that an inmate is entitled to only minimal protections to satisfy due process in a parole proceeding. Citing *Greenholtz*, Respondent contends that due process in state parole procedures is satisfied merely if they afford the inmate an opportunity to be heard and a decision informing him why he did not qualify for parole release. The Ninth Circuit, however, has held that requiring less than the some evidence standard "would violate clearly established federal law because it would mean that a state could interfere with a liberty interest - that in parole - without support or in an otherwise arbitrary manner." *Sass*, 461 F.3d at 1129. Thus, the some evidence standard of *Superintendent v. Hill* is clearly established law in the context of parole denial for purposes of federal habeas review. *Ibid.*

4

1    In order to determine whether the state court decisions were contrary to, or an
2 unreasonable application of, clearly established federal law, the court looks to the last
3 reasoned state court opinion, which is that of the superior court denying the state habeas
4 petition. Answer Ex. 12 (*In re Steele*, Case No. CR03534, slip op. (Super. Ct. Tehama Co.
5 Jan. 5, 2005)). *See Shackleford*, 234 F.3d at 1079 n.2.

6    **B.    Board's Unsuitability Determination**

7    In his first claim for relief, petitioner contends that his due process rights were
8 violated because the Board's decision was not supported by some evidence. The superior
9 court denied this claim on the following grounds:

> The final ground presented by the Petition, and the only ground having some semblance of merit, is Petitioner's claim that the Board of Prison Term's [sic] decision is not supported by "some evidence." This Court can understand Petitioner's dismay. A reading of the record from the "Parole Board's" hearing suggests many positive attributes and accomplishments by Petitioner which would suggest that parole is appropriate. Nevertheless, the transcript of the proceedings and the findings of the Parole Board also indicate that there is "some evidence" supporting the decision to deny parole. The judicial branch of government is authorized to review parole decisions, but may only overturn those decisions when the record fails to establish "some evidence" supporting the Board's decision. [*In re Rosenkrantz* (2002) 29 Cal. 4th 616, 658.]

17 *In re Steele*, slip op. at 2.

18    **1.    State Regulations Governing Parole Suitability**

19    In assessing whether the Board's denial of parole was supported by some evidence,
20 the court's "analysis is framed by the statutes and regulations governing parole suitability
21 determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at
22 915). "Accordingly, here we must look to California law to determine the findings that are
23 necessary to deem a prisoner unsuitable for parole, and then must review the record in
24 order to determine whether the state court decision holding that these findings were
25 supported by 'some evidence' in [petitioner's] case constituted an unreasonable application
26 of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Ibid*. Under California
27 law, "[t]he Board must determine whether a prisoner is presently too dangerous to be
28 deemed suitable for parole based on the 'circumstances tending to show unsuitability' and

the 'circumstances tending to show suitability' set forth in Cal. Code. Regs., tit. 15 § 2402(c)-(d)." *Ibid.*

Title fifteen, section 2402, of the California Code of Regulations sets forth the criteria for determining whether an inmate is suitable for release on parole. The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail." Cal. Code. Regs., tit. 15 § 2402(c). The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner suffered from Battered Woman Syndrome at the time of committing the crime; (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to function within the law upon release." Cal. Code. Regs., tit. 15 § 2402(d).

   2.   ***Biggs* Challenge**

In support of his claim that the Board's decision was not supported by some evidence, petitioner argues that the Board improperly relied on the unchanging circumstances of the commitment offense and his prior history to find him unsuitable for parole. Petitioner relies on *Biggs*, where the Ninth Circuit suggested in dicta that sole reliance on the commitment offense could raise "serious questions" about a state prisoner's liberty interest in parole. *See Biggs*, 334 F.3d at 916-17. *Biggs* upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that the value of the criminal offense fades

over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17.

As the Ninth Circuit noted in *Sass*, "*Biggs* affirmed a denial of parole after holding that the circumstances of the offense and conduct prior to imprisonment constituted some evidence to support the Parole Board's decision." *Sass*, 461 F.3d at 1126 (citing *Biggs*, 334 F.3d at 917). *See Biggs*, 334 F.3d at 916 ("As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.").

The Ninth Circuit has expressed competing views on *Biggs* in subsequent panel decisions. In *Sass*, the Ninth Circuit held that evidence of Sass's prior offenses and the gravity of his commitment offenses constituted some evidence to support the Board's decision. 461 F.3d at 1129. Acknowledging the cautionary statements in *Biggs* concerning the potential for a due process violation by continued reliance in the future on immutable factors, *Sass* criticized that part of the opinion as improper speculation about how future parole hearings could proceed. *Ibid.*

In *Irons*, however, the Ninth Circuit echoed the concern raised in *Biggs* and expressed its "hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 505 F.3d at 854 (citing *Biggs*, 334 F.3d at 917). Although the court determined that the Board's unsuitability finding was supported by "some evidence" that Irons's crime was especially cruel and callous, the *Irons* panel pointed out that in the cases holding that sole reliance on the commitment offense did not violate due process, namely, *Irons*, *Sass* and *Biggs*, "the decision was made before the

7

inmate had served the minimum number of years required by his sentence." *Irons*, 505 F.3d at 852-54. *Irons* reasoned that due process was not violated when these prisoners were deemed unsuitable for parole "prior to the expiration of their minimum terms," even if they had demonstrated substantial evidence of rehabilitation. *Id.* at 854.

Recently, the Ninth Circuit held rehearing en banc in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir.), *reh'g en banc granted*, 527 F.3d 797 (9th Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The three-judge *Hayward* panel had concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole, and held that the governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in *Hayward*; since holding rehearing en banc on June 24, 2008, the Ninth Circuit has ordered briefing on the questions, *inter alia*, whether the order granting rehearing en banc should be vacated and submission of the matter deferred, pending the California Supreme Court's decisions in *In re Lawrence*, No. S154018 and *In re Shaputis*, No. S155872, both of which cases were argued on June 4, 2008. *Hayward v. Marshall*, No. 06-55392, slip op. at 2 (9th Cir. July 10, 2008).

Unless or until the en banc court overrules the holdings of the earlier Ninth Circuit panel decisions in *Biggs*, *Sass* and *Irons*, these cases hold that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process which is satisfied if some evidence supports the Board's parole suitability decision. *Sass*, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole, *Sass*, 461 F.3d at 1129. *Biggs* and *Irons* further suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during

8

incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence. See *Irons*, 505 F.3d at 853-54.

Relying on *Biggs* and *Irons*, petitioner contends that the commitment offense is no longer a reliable predictor of his present and future dangerousness and does not satisfy the "some evidence" standard. Respondent counters that the court may not grant relief on the purported *Biggs* claim because *Biggs* is not clearly established federal law as determined by the Supreme Court. Assuming, without deciding, that under some circumstances, habeas relief may be granted under *Biggs* on a claim that parole denial based on the Board's sole reliance on the commitment offense and other unchanging factors does not satisfy the some evidence standard, the court finds that petitioner fails to establish the predicate for a *Biggs* claim because the Board did not rely solely on the unchanging factors of his commitment offense and prior criminal history, but also his lack of realistic parole plans, as discussed further below.

### 3.   Parole Unsuitability

At the August 2004 hearing, the Board considered several factors favoring petitioner's suitability for parole, including petitioner's favorable institutional behavior, exemplary disciplinary record, good work record, favorable counselor reports, educational and vocational training, and participation in Alcoholics Anonymous, Narcotics Anonymous, and other self-help and therapy activities. *Id.* at 68-71. Petitioner received only one "115" serious rules violation report during his incarceration, which was issued in October 1981 just after he came to prison, and three "128" counseling memos, the last one being issued in 1985. *Id.* at 66.

Having considered factors of suitability, the Board nonetheless concluded that petitioner posed an unreasonable risk of danger to society and a threat to public safety if released from prison based on the following factors of unsuitability: (1) the commitment offense was carried out in an especially cruel manner; (2) unstable social history and prior history of criminal conduct; and (3) inadequate parole plans.

9

### a. Commitment Offense

The regulations provide that the Board may consider the following factors in determining whether the commitment offense was "especially heinous, atrocious or cruel:" (A) multiple victims were attacked, injured or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Cal. Code Regs., tit. 15 § 2402(c)(1).

Petitioner discussed certain details of the crime at the hearing: at the time of the murder, petitioner was eighteen years old and homeless. On the night of the murder, petitioner had been drinking, and the victim gave petitioner and his friend a ride to a party where he drank more beer. Answer Ex. 4 at 12-13. After the party, petitioner went to the victim's house, where the victim appeared to petitioner wearing only a tee shirt and asked him into the bedroom. *Id.* at 48. Petitioner refused, put on his shoes, and opened the door to leave when victim again called petitioner into his bedroom. *Id.* Petitioner "got angry" and went to the bedroom to confront the victim, who exposed himself, grabbed petitioner and made sexual remarks. *Id.* at 15-16, 48. When asked why he went into the bedroom and got close enough to the victim that he could grab petitioner's genitals, petitioner answered that at that age, he was "very confrontational" and "embarrassed and I didn't like what he'd said to me." *Id.* at 49. Petitioner explained that he did not simply leave the victim's house because he was homeless, and everyone in his life had abandoned him, and he took out his anger on the victim. *Ibid.* Petitioner stated that "everything that was going on in my life, it just came to a boiling point. . . . And I grabbed the hammer and I proceeded to beat him to death. . . . I'm not sure how many times I hit him, but I knew it was quite a few." *Id.* at 15-16.

The deputy district attorney of Tehama County appeared at the hearing to oppose petitioner's parole suitability, and pointed out that petitioner took the victim's car after killing

10

him. *Id.* at 49. Petitioner did not remember taking anything from the victim's house, but acknowledged that the victim's stereo was found in the car with petitioner. *Id.* at 50.

The record therefore contains some evidence to support the Board's determination that the offense was cruel and committed in a callous manner in that "[i]t was very dispassionate in the way that it was done and the victim was abused and mutilated during the offense by being hit in the head with a hammer multiple times," and in a manner which showed "no regard at all for human suffering." Answer Ex. 4 at 64. The record also contains some evidence to support the Board's determination that "the motive for the crime was minute and very trivial in relation to the offense, in that the only reason this crime occurred was because you were out of control with your anger and decided to confront this man instead of just leaving the residence." *Id.* at 64-65.

### b. Prior History

The Board reviewed petitioner's juvenile record, noting that petitioner was taken into juvenile custody first in 1975 at the age of thirteen for petty theft. Answer Ex. 4 at 19. Petitioner acknowledged that he started drinking alcohol at about that time. *Id.* at 20. Four more juvenile petitions were filed against him between February and April, 1977, for throwing a rock at a vehicle, resisting arrest, escaping a county juvenile facility, and damaging a place of confinement. *Ibid.* Petitioner was sent to the California Youth Authority ("CYA") for a ninety-day evaluation followed by thirty days of confinement, after which he was placed in a foster home. *Id.* at 21. In December 1977, petitioner received a juvenile petition for malicious mischief and was remanded to a boys' ranch, but was returned to the juvenile authorities because he refused to stay there. *Id.* at 22. He remained in juvenile custody until he was sentenced to the CYA in March 1978. *Ibid.* He was paroled in December 1978 at the age of sixteen. *Ibid.*

Petitioner lived in Jackson with his father and stepmother, who kicked him out of the home after petitioner started drinking again, stealing money, and getting into trouble. *Id.* at 22-24. Petitioner next lived briefly with his mother in Red Bluff until she kicked him out for drinking and stealing, then with his sister, and finally his aunt with the same result. *Id.* at

11

24. By December 1980, at age eighteen, petitioner lived with his brother in an abandoned house. *Ibid.* Petitioner's only adult arrest and conviction was for the commitment offense. Answer Ex. 7 at 3.

The record therefore contains some evidence to support the Board's determination that petitioner had an escalating pattern of criminal conduct as a juvenile up to becoming an adult at age eighteen, when he committed the commitment offense. *Id.* at 65. There is also some evidence to support the Board's finding that petitioner has a history of unstable relationships with both of his parents, and that he failed to profit from society's previous attempts to correct his criminality, including juvenile hall, juvenile probation and CYA evaluation. *Ibid.*

### c. Parole Plans

At the hearing, petitioner discussed his plans to live with his mother, stepfather and brother in Orland, a rural area. Answer Ex. 4 at 39, 41. He offered letters of support from his mother and stepfather, sister, and brother. *Id.* at 43-45. Petitioner stated that his brother was a recovering drug addict who lived with their mother because he needed the structure she provided. *Id.* at 45. Petitioner also acknowledged that illegal drugs are easily available in Tehama County. *Id.* at 52.

Petitioner's employment plans involved sending out letters to local employers in Red Bluff and Tehama County; the responding employers indicated willingness to help once petitioner gets out of prison. *Id.* at 40. Petitioner stated that he had ten years experience as a furniture finisher. *Id.* at 41. Petitioner also indicated that he intended to continue attending substance abuse programs. *Id.* at 42.

During questioning by the deputy district attorney of Tehama County, petitioner acknowledged that he led a troubled life before he was incarcerated, and that he was more successful in the structured environment of prison. *Id.* at 51. The deputy district attorney also expressed concerns that petitioner had no support system in Tehama County other than his mother, stepfather and brother, and that he had no job leads there, leaving the

potential for petitioner to have idle time where drugs and alcohol are readily available. *Id.* at 57-58.

The record therefore contains some evidence to support the Board's determination that petitioner did not have realistic plans for release based on concerns about living with his parents in a rural area with limited job opportunities, and finding that his brother could not offer much support because of his own struggles. *Id.* at 66-67.

Contrary to petitioner's claim that the Board's decision violated his right to due process, the record contains some evidence to support the Board's parole unsuitability determination. The state courts' denial of habeas relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## II. Ex Post Facto Claim

In his second claim for relief, petitioner contends that the Board's denial of parole has altered petitioner's sentence for second degree murder from fifteen years-to-life to a penalty of twenty-five years-to-life in violation of the ex post facto clause of the Constitution. Because the maximum sentence for second degree murder is life in prison, it is impossible for the Board to extend petitioner's sentence beyond that term. This claim is therefore denied.

## CONCLUSION

Based on the foregoing, the petition for a writ of habeas corpus is DENIED. The clerk of the court shall terminate all pending motions, enter judgment for respondent, and close the file.

**IT IS SO ORDERED.**

Dated: August 25, 2008.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\Steele2061.deny.wpd